IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2005 JUN 29  A 10: 05

RENE MEDINA,                     :

    Petitioner,                  :     Case No. 92-618-CR-KING/SIMONTON

                          :     (Southern District of Florida)

v.                               :

SCOTT A. MIDDLEBROOKS,           :     Civil No. 2:05cv614.T

    Respondent.                  :

_____ :

### PETITION FOR THE ISSUANCE OF THE WRIT OF HABEAS CORPUS

COMES NOW, the petitioner, Rene Medina (hereinafter "Medina"), pro se, and respectfully files this petition before this Honorable Court.  As grounds for the granting of this petition Medina states and shows as follows.

### I.   JURISDICTION

The jurisdiction of this Court is invoked under 28 U.S.C. §2241(a)(c)(3) as guaranteed by the Suspension Clause of the United States Constitution, Art. 1, §9, cl.2, and The All Writs Act as codified in 28 U.S.C. §1651(a).

### II.   JURISDICTIONAL STATEMENT

#### The Custody Requirement

The writ of habeas corpus is available to prisoner's in custody in violation of the Constitution, laws or treaties of the United States.   See 28 U.S.C. §2241(c)(3)('the writ of habeas

corpus shall not extend to a prisoner unless...[h]e is in custody in violation of the Constitution or laws or treaties of the United States..."). Id.

Medina is a federal prisoner serving an imposed term of imprisonment at the Federal Prison Camp Montogomery located at the Maxwell Air Force Base in Montgoemry, Alabama. Therefore, this Court has jurisdiction of this matter.

### III.  VENUE

This is the proper venue for the instant action because, a §2241 habeas corpus "must" be brought in the jurisdiction where the petitioner is being confined. See Hernandez v. Campbell, 204 F.3d 861 (9th Cir. 2000); Hooker v. Sivley, 187 F.3d 680 (5th Cir. 1999)("[Petitioner] is entitled to a judicial determination of whether he may proceed under §2241 and that determination can only be made in the district where he is incarcerated"). Id.

### IV.  STATEMENT OF FACTS

Rene Medina was indicted in 1992, along with five co-defendants in a three count indictment (Exhibit "A") charging them with (1) conspiracy to import; (2) importing; and (3) conspiracy to possess "a detectable amount of cocaine". All three counts involved basically the same transactional facts. Before trial, but after the jury had been selected, Medina and another co-defendant plead guilty without a plea agreement, the remainder of the defendants went on to trial.

On February 11, 1994, Medina was sentenced to 360 months' imprisonment under a total offense level of 40 (U.S.S.G.) and a criminal history category I (Medina had no prior criminal history). Medina did not appeal his sentence.

On      ,    ,1997 , Medina filed a motion seeking resentencing pursuant to 18 U.S.C. §3582. The district court denied Medina's motion. Medina appealed the decision to the Eleventh Circuit and the Eleventh Circuit vacated and remanded the "revised" sentence by the district court with specific instructions. In the interim Apprendi, infra, was decided and Medina's claims under Apprendi were presented before the district court. Notwithstanding, Medina's claims that his sentence violated the intentions of the Supreme Court in Apprendi, the district court resentenced Medina to 292 months' imprisonment that is, 280 months over what is permissible under the Constitution and Laws of the United States. this petition for the issuance of the writ of habeas corpus ensues.

## V.  SUMMARY OF ARGUMENT

Medina's present imprisonment is unconstitutional because, he is now serving a sentence which was imposed in violation of Medina's Indictment Clause, Right to jury trial, and proof of guilt beyond a reasonable doubt. The aforementioned claim was Medina's identical claim to the district court during his resentencing process. Medina vigorously argued before the District Court for the Southern District of Florida that, under

his 292 months' sentence violated <u>Apprendi</u>.  The district court adhearing by the Eleventh Circuit wrongful interpretation of <u>Apprendi</u> upheld Medina's "unconstitutional" sentence.  Errors by the state and federal courts such as the aforementioned led to the Supreme Court's rulings in <u>Blakely v. Washington</u>124 S.Ct. 2531 (2004) and <u>United States v. Booker</u>, 543 U.S. _____ , 125 S.Ct. 738 (2005) (i.e. in both <u>Blakley</u> and <u>Booker</u> the Court relied in In re Winship, 397 U.S. 359, for its opinion).  In <u>Blakely</u> the Court held while clarifying <u>Apprendi</u> )i.e. <u>Apprendi</u> also relied in <u>In re Winship</u>) that:

> "Accordingly, we reaffirm our holding in <u>Apprendi</u> - Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts...must be admitted or proved to a jury beyond a reasonable doubt." <u>Id.</u>

In the case at bar Medina's indictment charges a "detectable" amount of cocaine and Medina only pled guilty to the language of the indictment thus, did not admit to any additional amount of cocaine.  Consequently, any additional cocaine beyond that found in a detectable amount was the result of impermissible judge made findings which superseded the scope of the indictment and the admissions by the defendant.  The Supreme Court cleraly announced  in <u>Booker</u> and <u>Blakely</u>  that the maximum sentence a judge can imposed in a case such as Medina's is not the maximum authorized under the statute but rather, the maximum authorized by the United States Sentencing guidelines (i8 U.S.C. §3553(a)).

At the time of Medina's sentence the Uited States Sentencing Guidelines (U.S.S.G.) madated (i.e. now only advisory) that a defendant found guilty of possessing a detectable amount of cocaine be sentenced to Level 12 U.S.S.G. which at the time of resentencing mandated but now recommends anywhere from 10 to 16 months' imprisonment. In essence Medina's present sentence surpasses the maximum authorized by law by 292 months, and as such is an unconstitutional sentence. Wherefore, there should exist no doubt before this Court to the fact that Medina is presently help prisoner in a fashion contrary to the Constitution and laws of the United States and therefore, this petition should be granted.

Medina further submits that numerous courts have held that neither <u>Blakely</u> or <u>Booker</u> are retroactively applicable to cases on collateral review such as the instant habeas corpus. Notwithstanding, there also exists the possibility that federal courts are once again misinterpreting the intentions of the Supreme Court as was the case in <u>Apprendi</u>, which needed to be clarified by <u>Blakely</u>, and in <u>Blakely</u> which the Court clarified in <u>Booker</u>. For the foregoing reasons Medina prays of this Honorable Court to conduct a detailed review the claims presented below in this petition's Memorandum of Law wherein, the retroactive application of <u>Blakely</u>, and <u>Booker</u> are presented in details. For the foregoing reasons this petition should be granted.

## VI.   ARGUMENT AND MEMORANDUM OF LAW

## 1. Movant'S Conviction and Sentence Constitute a Fundamental MISCARRIAGE OF JUSTICE

The majority of the federal Circuit Courts have ruled that under Blakely v. Washington, 124 S.Ct. 2531 (2004) as affirmed in United States v. Booker, 543 U.S.____, 125 S.Ct. 738 (2005) a sentence imposed under the mandatory ex-mandatory United States Sentencing Guidelines constitutes plain error. See United States v. Antonakopoulos, U.S. App. LEXIS 3015 (1st Cir. 2005); United States v. Serrano-Beauvaix, 2005 WL 503247 (1st Cir. March 4, 2005); United States v. Hughes, 396 F.3d 373 (4th Cir. 2005); United States v. Mares, 2005 WL 503715 (5th Cir. 2005); United States v. Oliver, 397 F.3d 369 (6th Cir. 2005); United States v. Barnett, 2005 U.S. App. LEXIS 2644 (6th Cir. 2005)(Plain Error prejudice presume for mandatory guidelines sentences); United States v. Ameline, 2005 WL 350811 (9th Cir.). en banc. United States v. Labastida-Segura, 396 F.3d 1140 (10th Cir. 2005). The "plain error" of a sentence under Blakely/Booker, supra is the direct result of the wrongful interpretation of Apprendi, infra, by the federal district and appellate courts. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). Therefore, the standard of cause and prejudice are axiomatically met. Further, there is no case law that would support the proposition that a violation of a defendant's Sixth Amendment right to jury trial and to be found guilty "only" by the standard

would not constitute a fundamental miscarriage of justice. See
Murray v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397 (1986). In Murray
the supreme Court relied in In re Winship, infra, when conducting
its analysis in reference to "what constitutes" a clear manifested
miscarriage of justice, the Court relied in its decision in In
re Winship, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.ct. 1068 (1970).
The Court held that "the Court held the rule in In re Winship to
be held retroactive, because 'the major purpose of the
constitutional standard of proof beyond a reasonable doubt
announced in Winship was to overcome an aspect of a criminal trial
that substantially impairs the truth finding function'.
Consequently, our rejection in Engle of the contention advanced
today - that cause need not be shown if actual prejudice is shown
- is fully applicable to constitutional claims that call into
question the reliability of an adjudication of legal guilt". Id.
at 413. The Court went on to hold that "However, as we also noted
in Engle, '[i]n appropriate cases' the principles of comity and
finality that inform the concepts of cause and prejudice 'must
yield to the imperative of correcting a fundamental unjust
incarceration." 456 U.S., at 135, 71 L.Ed.@d 783, 102 S.Ct. 1558.
'We remain confident that, for the most part, 'victims of
fundamental miscarriage of justice will meet the cause and
prejudice standard.' Ibid. 'But we do not pretend that this will
always be true'. 'accordingly, we think that in an extraordinary
case, where a constitutional violation has probably resulted in
the conviction of one who is probably innocent, a federal habeas

court may grant the writ even in the absence of showing of cause for the procedural default". Id. at 413 [477 US 495]. The Court's ruling in Murray made enphasis on the inconsistent jury verdict rendered in In re Winship. "Moreover, although neither Francis nor Wainwright v. Sykes involved a constitutional claim that directly called into question the accuracy of the determination of the petitioner's guilt, the defaulted claims in Engle, no less than respondent's claim in this case, did involve issues bearing **on the reliability of the verdict,** In re Winship, (citations omitted), which was 'the basis for [the prisoner's] constitutional claim', Engle, 456 U.S., at 131, 71 L.Ed.2d 783, 102 S.ct. 1558,which holds that "the Due Process Clause protects the accused against conviction **except** upon proof beyond a reasonable doubt on every fact necessary to constitute the crime with which he is charged.'" Id. at [477 U.S. 495].

In essence, if a person is not found guilty beyond a reasonable doubt then, his incarceration violates "Due Process". See In re Winship, supra, Murray, supra. Therefore, the incarceration of the defendant would not only be unconstitutional but it would also constitute a manifested miscarriage of justice that cannot be upheld under In re Winship, supra, Murray, supra, Engle, supra, Apprendi, supra, Blakely, supra, Booker, supra, or the standards of Due Process.

For the foregoing reasons Movant submits that this Honorable Court should set aside the principles of comity and finality that inform the concepts of cause and prejudice in order to correct

the clearly manifested miscarriage of justice that has taken place in the case at bar. As established by the record Movant never admitted to nor was        found guilty of the elements of the offense for which he stands convicted and        sentence enhanced.

2.  **Petitioner'S Sentence Is Unconstitutional**

At the time of Movant's conviction, sentence, and appeal, "all" federal District and Circuit Courts were under the wrongful impression that under Apprendi, supra, the maximum punishment that could be imposed for a criminal offense was the maximum punishment dictated by the criminal statute, and that judge-made findings superseding the scope of the indictment and jury findings which aggravated the offense thereby, increasing punishment were permissible. However, in Blakely, supra, the Court clarified such misinterpretation by federal district and circuit courts. In Blakely, Justice Scalia, writing for the Court, held: "Our precedents make clear however, that the 'statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on facts reflected in the jury verdict or admitted by the defendant'". (emphasis in original)(citing Ring v. Arizona, 536 U.S. 602 (2002))

The Court's opinion in Blakely has now been made applicable to the United States Sentencing Guidelines ("U.S.S.G."). See Booker, supra. Under Booker, the U.S.S.G. are now to be considered advisory rather than binding. As to the issue at bar, the Court in Booker held the following:

"According we reaffirm our holding in <u>Apprendi</u>: Any fact
(other than a prior conviction) which is necessary to support
a sentence exceeding the maximum authorized by the facts
established by a plea of guilty or a jury verdict must be
admitted by the defendant or proved beyond a reasonable
doubt." <u>Id</u>.

There is no question that Petitioner's sentence was greatly
enhanced beyond what he would have received based on the jury
verdict. The amount of            was not set forth in the
Indictment and consequently, it cannot be said that the jury found
Movant guilty of such amount. Therefore, it is axiomatic that the
jury verdict in the instant case was an unreliable verdict. The
maximum sentence under the U.S.S.G. for the charged offense in
this case should have been      month's imprisonment and no
restitution. Petitioner's sentence was enhanced based on
judge-made findings which impermissibly superseded the scope of
the Indictment and the findings of the petit jury. Consequently,
Movant's conviction and sentence present a manifested miscarriage
of justice. See <u>In re Winship</u>, at 364! (1970).

## The Applicability of In re Winship, Apprendi, Blakely, and Booker, to Movant's Case

The plain language of 28 U.S.C. §2255 support's Movant's
position that he is entitle to be resentenced under the <u>Booker</u>,
decision:

"A prisoner under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States , or that the court was without jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In the instant case, the Movant's sentence was imposed "in violation of the Constitution" because, the sentence was arrived at "by application of the preponderance of the evidence standard" rather than the constitutionally required standard of proof "beyond a reasonable doubt by the jury's verdict, and not by judge made findings. In re Winship, Apprendi, and Booker, ante, stand for the proposition that the Constitution requires a jury to make such findings for the purposes of sentencing. Id. In re Winship, 397 U.S. 358, 364, 25 L.Ed. 675, 24! S.Ct. 431 (1970); United States v. Gaudin, 515 U.S. 506, 511, 132 L.Ed.2d 444! 115 S.Ct. 2310 (1995).

Movant's sentence "exceeded the maximum authorized by law." The term maximum authorized by law as defined by Booker and Apprendi is any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must

be admitted by the defendant or proved to a jury beyond a reasonable doubt. Because <u>In re Winship</u>, <u>Apprendi</u>, and <u>Gauding</u>, were all decided before the instant case achieved finality, the clear language of §2255 requires the Court to order Movant to be resentenced under the standards of <u>Booker</u> which extended <u>Blakely</u> to the federal sentencing guidelines, re-affirmed <u>Apprendi</u>, and relied in <u>In re Winship</u>, and the ruling was intended to preserve the substance of the Sixth Amendment, denial of this petition would be inconsistent with the Supreme Court's holdings in the supra cited cases, the Fifth Amendment's "Due Process Clause' and the Sixth Amendment right to jury trial and the prerequisite that a defendant be found guilty beyond a reasonable doubt before he is said that his incarceration and sentence are constitutional.

In <u>Yates v. Aiken</u>, 484 U.S. 211, 216-17 (1988), the Court addressed the issue of whether a petitioner is entitled to have a "new rule" applied to his motion for post conviction relief vis a vis the law at the time the case was decided. The issue for this court is how the <u>Yates</u> decision defined the terms "new rule" versus the application of a constitutional principle:

> "The theory that a habeas petitioner is entitled to the law prevailing at the time of his conviction is however, one which is more complex than the Court has seemingly recognized. First, it is necessary to determine whether a particular decision has really announced a "new" rule at all or whether it has simply applied a well-established

constitutional principal to govern a case which is closely analogous to those which have been previously considered in the prior case law....One need not be a rigid partisan of Blackstone to recognize that many, though not all, of the Court's constitutional decisions are grounded upon fundamental principles whose content does not change dramatically from year to year, but whose meaning are altered slowly and subtly as generations succeeds generation. In such a context that it appears very difficult to argue against the application of the "new" rule in all habeas cases since one could never say with any assurance, that this Court would have ruled differently at the time the petitioner's conviction became final. 394 U.S., at 263-64. Yates, supra, citing Desist v. United States, 394 U.S. 244, 263-64 (1969)(Harlan, J. dissenting).

The decision in Booker, is **not** a new rule. Rather the decision is an application of a basic constitutional principle to the federal sentencing guidelines, which In re Winship, supra, and Apprendi, supra, both codified: "It has been settled throughout our history that the constitution protects every criminal defendant against conviction except by proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged...It is equally clear that the Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." Booker,

citing <u>In re Winship</u>, 397 U.S. 358, 364 (1970) and <u>United States</u>
<u>V. Gauding</u>, 515 U.S. 506, 511 (1995). The decision in <u>Booker</u>
extends the rules codified in <u>In re Winship</u> (i.e. which was held to
be retroactive to cases on collateral review) and <u>Apprendi</u> as
clearly stated by by Justice Stephens in part one of <u>Booker</u>:
"Accordingly, we reaffirm our holding in <u>Apprendi</u> (i.e. <u>Apprendi</u>
relied in <u>In re Winship</u>):

> "Any fact (other than a prior conviction) which is necessary
> to support a sentence exceeding the maximum authorized by
> the facts established...must be admitted or proved to a jury
> beyond a reasonable doubt." <u>Id</u>.

To determine whether Movant is entitle to be re-sentenced
under the standards announced by the Supreme Court in
<u>In re Winship</u>, <u>Apprendi</u>, <u>Blakely</u>, and Booker, this Court must
understand the interplay between the two cases which were
intertwined with <u>Yates</u>. The exact same set of factual
circumstances (regarding the application of one case decided before
<u>Yates</u> and one case decided after <u>Yates</u>' direct appeal was decided)
exists in this matter vis a vis. <u>In re Winship</u>, (decided before
Movant's appeal), <u>Apprendi</u>, re-affirming <u>In Re Winship</u> (decided
after Movant's appeal was perfected).

In <u>Yates</u>, the South Carolina Attorney General argued that
based on Justice Harlan's theory of retroactivity stated in his
dissent in <u>Deisist</u>, (which was subsequently adopted by the Supreme
Court, see <u>Yates</u>, supra, at 215), a new announced constitutional
rule should not be applied retroactively to cases pending on

collateral review. <u>Yates</u>, supra, at 215. Under this argument, Movant would not be entitled to be resentenced.

However, the Court in <u>Yates</u> applied Justice Harlan's "new rule versus application of well established constitutional principle" in holding that <u>Yates</u> was entitled to retroactive application of a decision by the Supreme Court - meaning arguendo that the Movant here, is entitled to be resentenced under <u>Booker</u>. <u>Yates</u> was a petitioner who sought retroactive application of the decision in <u>Francis v. Franklin</u>, 471 U.S. 307 (1985), which was decided after <u>Yates</u>' direct appeal was denied. The decision in <u>Francis</u>, was based on the decision in <u>Sandstorm v. Montana</u>, 442 U.S. 510 (1979), a decision issued prior to <u>Yates</u>' appeal.

The interplay between the decision in <u>Sandstorm</u>, <u>Francis</u>, and <u>Yates</u>, is crucial to understand since it mirrors the timing and factual scenario of the Movant at bar. <u>In re Winship</u>, (decided before Movant's appeal), Apprendi (reaffirming <u>In re Winship</u> and decided after Movant's appeal), <u>Blakely</u> and <u>Booker</u> (both reaffirming the essence of the Sixth Amendment, the standard of proof beyond a reasonable doubt, the essence of the Sixth Amendment, reaffirming <u>In re Winship</u>, decided after the time expired for Movant to argue same on direct review (§2255 motion)).

The <u>Yates</u> Court held that Yates was entitled to retroactive application of <u>Francis</u> by holding that: "Our decision in Francis was merely an application of the principle that governed our decision in <u>Sandstorm v. Montana</u>, which had been decided before

petitioner's trial took place." Yates, 216-17. The Court in Yates announced that the decision in Francis did not announce a new rule. Id. at 218. Yates held that Francis merely applied a constitutional holding made in Sandstorm. Under this analysis, Yates was entitled to have the decision in Francis applied retroactively.

Simmilarly, the holding in Booker did not announce a new rule. Rather, the holding in Booker applied the Constitutional principles codified in In re Winship, (decided in the year 1970), and reaffirmed in Apprendi, (decided in the year 2000). As in Yates the Movant in the case at bar, seeks retroactive application of Booker, (decided after Movant's direct appeal) and at which time the Supreme Court's decision in In re Winship was controlling law (stare decisis). Therefore under the holding in Yates, the Movant is entitled to retroactive application of the holdings in Booker, and must be resentence under the principles codified in Apprendi, and in In re Winship, both mandating that Movant only be liable at resentencing for charges that were admitted or proved beyond reasonable doubt, and for the sentence to be imposed in accordance or reflecting the legal sentencing standard found in 35 U.S.C. §3553(a).

IV. **Booker Has Created an Intervening Change of Law In "All" Federal Circuits And As Such, Booker Issues Are Properly Addressed For the First Time By Way of 28 U.S.C. §2255 Motion (Habeas Corpus) Without the Need for the Supreme Court to Announce Booker Applicable to Cases on Collateral Review**

"all" federal Circuit Courts have held that a <u>Booker</u> error constitutes plain error. See ante p.   .  Needed to be noticed in the fact that the plain error consists of the "misinterpretation" by all Circuit Courts of the Standards enunciated by the Supreme Court in <u>Apprendi</u>, supra. The Court's decision in <u>Booker</u> which clarified the standards set forth in <u>Apprendi</u> while relying in In re Winship, supra, has created an intervening change of law in "all" federal Circuits.  Therefore, Movant has a constitutional and statutory right to challenge the conviction and sentence by way of a 28 U.S.C. §2255 motion (habeas corpus).  See <u>Davis v. United States</u>,  417 U.S. 333, 41 L.Ed.2d 109, 94 S.ct. 2298 (1974). In <u>Davis</u> the Court noted:  "The sole issue before the Court in the present posture of this case is the propriety of the Court of Appeals' judgment that a change in the law of that Circuit after the petitioner's conviction may not be successfully asserted by him in a §2255 proceeding".  See also <u>Sanders v. United States</u>, 373 U.S. 1, 10 L.Ed.2d 148 (      ). The Court in <u>Davis</u> quoted <u>Sanders</u>, supra, by noting that: "In <u>Sanders</u> the Court held, inter alia, that even though the legal issue raised in a §2255 motion 'was determined against [the applicant] on the merits on a prior application,' 'the applicant may [nevertheless] be entitled to a new hearing upon showing an intervening change in the law....'" <u>Sanders</u>, L.Ed.2d 148.  "The same rule applies when the prior determination was made on direct appeal from the applicant's conviction, instead of in an earlier §2255 proceeding, 'if the new law has been made...since the trial

and appeal'". <u>Kaufman v. United States</u>, 394 U.S. 217 (1969). "Thus, the Court of Appeals erred in holding that "the law of the case," as determined in the earlier appeal from the petitioner's conviction, precluded him from securing relief under §2255 on the basis of an intervening change in law". <u>Id</u>.

The case at bar constitutes one of those cases where a miscarriage of justice has taken place because, Movant neither admitted or was found guilty of the sentence enhancements that were reached at by the application of the preponderance of the evidence during judge made findings and not by the constitutionally required standard of proof beyond a reasonable doubt. Therefore, Movant's conviction and sentence are violative of Movant's rights under the Constitution to only be liable for charges launched by indictment (Fifth Const. Amend.), jury trial, right to be found guilty 'only' beyond a reasonable doubt by "a jury" (Sixth Amendment). The aforementioned constitutional violations have already been ruled by the Supreme Court not to constitute harmless error not requiring reversal. Consequently, the miscarriage of justice in the instant matter is cognizable under habeas corpus as decided by the Court in <u>Davis</u>. "'Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoner's rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.' 'Thus, there can be no doubt that the grounds for relief under §2255 are

equivalent to those encompassed in §2254', the general federal habeas statute, under which relief is available on the ground that '[a person] is in custody in violation of the **Constitution** or laws or treaties of the United States.'" (Emphasis added.). The Court concluded that the text of the statute cannot sustain the proposition that only claims "of constitutional dimension" are cognizable under §2255 thereby, implicitly holding that Movant's claims in the instant matter are "cognizable" on §2255 because, Movant's claims consists of constitutional violations of the highest magnitude.

**V. The Constitutional Violations in the Instant Matter Constitute "Structural Error" and Therefore, Movant's Conviction and Sentence Cannot be Upheld**

A "structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself". <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991). Such errors "undermine[s] the structural integrity of the criminal tribunal itself," <u>Vasquez v. Hillery</u>, 474 U.S. 254, 263-264 (1986), and deprive an accuse of 'basic protections'". <u>Rose v. Clark</u>, 478 U.S. 570, 577-78 (1986). "The rights violated by these errors "protect important values that are unrelated to the truth-seeking function of the trial". Id. at 587 (Stephens, J., concurring in judgment), and their deprivation has "consequences that are necessarily unquantifiable and indeterminate." <u>Sullivan</u>, 508 U.S. at 282.

The violation of the right not to be sentenced for a crime that was not charged in an indictment readily satisfies these critiria. This structural safeguard serves to protect not only the individual accused but also the system of justice. Its elimination therefore vitiates the legitimating mechanism for prosecution and represents a "structural defect[] in the constitution of the trial mechanism." Fulminante, 499 U.S. at 309. Indeed, there can be no question that bypassing this grand jury requirement "affect[s] the framework within which the trial proceeds," rather than being "simply an error in the trial process itself". Id. at 310.

The right to have a group of citizens determine the validity of charges against an accused before a criminal trial may be initiated is a fundamental protection undergirding the criminal process.

Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty malicious and oppressive prosecution, it serves the invaluable function in our society of standing between the accuser and the accused to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

Id. Wood v. Georgia, 370 U.S. 375, 390 (1962). See also United States v. Calandra, 414 U.S. 338, 343 (1974)("the grand jury's historic functions survive to this day. Its responsibilities

continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of the citizens against unfounded prosecution"). "When a sentencing judge adds an element not found by the grand jury, the result are like those other structural errors, necessarily unquantifiable and indetermined". <u>Sullivan</u>, 508 U.S. at 282. In the case at bar Movant's sentence stands enhanced for aggravating factors not set forth in the indictment, not admitted by Movant, and not proved beyond reasonable doubt thus, the district court in the instant matter took it upon itself to substitute both, the grand jury and the petit jury. See <u>Gaither v. United States</u>, 413 F.2d 1061, 1066 (D.C. Cir. 1969); <u>United States v. Dionisio</u>, 410 U.S. 1, 17 (1973)(noting that the grand jury's historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor").

Sentencing a defendant for an offense not charged in the indictment or found by a jury **beyond a reasonable doubt** is error that affects "the entire conduct of the trial from beginning to end". <u>Fulminante</u>, 499 U.S. at 309-10. These errors are as fundamental to the structure of the trial as other errors which the Supreme Court has previously declared "structural". For instance, the "violation of the guarantee of a public trial required reversal without any showing of prejudice even though the values of a public trial may be intangible and unprovable in any particular case". <u>Id</u>. at 294-95 (discussing <u>Waller v. Georgia</u>,

385 U.S. 545, 553 (1967). Similarly, the right to be tried by an unbiased judge, in a community that has not been exposed to publicity highly negative to the defendant, are essential, and their denial constitutes structural error. Tumey v. Ohio, 273 U.S. 510, 535 (1927); Sheppard v. Maxwell, 384 U.S. 333, 351-52 (1966). Just as a trial with a bias judge, the sentencing of a defendant for a crime not charge in the indictment is an error of such magnitude that it "infect[s] the entire trial process". Nedder v. United States, 527 U.S. 1, 8 (1999). In Brady v. Maryland, 373 U.S. 83 (1963) the Court found that the government's withholding of exculpatory evidence violated due process and that because, there existed the possibility of a different outcome during the trial the violation required reversal. Similarly, in In re Winship, 397 U.S. 358 (1970), the Court granted relief because, the major purpose of the constitutional standard of proof beyond a reasonable doubt announced was to overcome an aspect of a criminal trial that substantially impaired the truth finding function. cited in Murray v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397 (1986).

In essence, there exists structural error in the case at bar requiring reversal because, Movant's sentence was enhanced based on judge-made findings conducted by the preponderance of the evidence superseding specifics of the indictment, not proved beyond a reasonable doubt, or admitted by Movant.

## VI.  Structural Error Warrant Reversal Regardless of the Evidence Against the Defendant

The Supreme Court has held that structural errors require reversal "without regard to the evidence in the particular case". Rose v. Clark, supra, at 577 (citing Chapman v. California, 386 U.S. 18 - at 23 n.8 (emphasis added). "They invalidate a conviction even though there might be no doubt that the defendant is guilty". See e.g. Vasquez v. Hillery, 474! U.S. 254 (1986)(reversing a conviction despite overwhelming evidence of the defendant's guilt because of an error in the grand jury composition). A structural error affects more than the accuracy of the result by definition,  it undermines the very process itself, and such error cannot be plugged into an evidence-qualifying formula. In Tumey v. Ohio, 373 U.S. 510 (1927), the Supreme Court reversed a conviction entered by a biased judge, even though "evidence show[ed] clearly that defendant was guilty," because "[n]o matter what the evidence was against him, [the defendant] had the right to have an impartial judge". Id. at 535. Similarly, a defendant has a right to indictment by a grand jury and conviction by a petit jury using the standard of "guilty beyond a reasonable doubt", or admitted by the defendant in his plea agreement.

Recognizing these principles, the Supreme Court in Sullivan v. Louisiana, 508 U.S. 275 (1993), reversed a conviction when the petit jury guarantee was undermined by a faulty reasonable

doubt instruction. The Court forbade a reviewing court to "engage in pure speculation--its view of what a reasonable jury would have done," when the result was that the "wrong entity judge[s] the defendant guilty.'" Sullivan, 508 U.S. at 281 (quoting Rose, 478 U.S. at 578). "[T]o hypothesize a guilty verdict that was never in fact rendered--no matter how inescapable the findings to support that verdict might be--would violate the jury trial guarantee." Id. at 279. In the case at bar the standard of proof beyond a reasonable doubt was violated and thus, the jury trial guarantee was bluntly violated.

The Supreme Court has consistently held that structural errors "are so intrinsically harmful as to require automatic reversal (i.d. affect 'substantial rights') without regard to their effect on the outcome". Nedder, 527 U.S. at 7. Because such structural errors "deprive defendants of 'basic protections'". Id. 8., they "will always invalidate the conviction." Sullivan, 508 U.S. at 279 (citing Fulminante, 499 U.S. at 309-10).

Movant submits being the victim of "structural error" because her constitutional right under the Fifth Amendment to "only" be found guilty by the standard of "beyond a reasonable doubt" or admitted by the defendant (Movant) was violated in Movant's criminal process. See In re Winship, supra, Apprendi, supra, Blakely, supra, Sullivan, supra, Hankerson, infra, Ivan v. New York, infra.

The safeguards of due process are not rendered unavailing simply because a determination may alredy have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from the judge-made findings by application of the preponderance of the evidence standard in this case, compared with what the Movant pled guilty to, differ significantly. Indeed, when viewed in terms of potential difference in restriction of personal liberty attendant to the punishment each conviction carries, the distinction established by possession of the admitted amount of cocaine by the defendant and that found by the judge-made findings may be of greater importance in relation to punishment than the difference between guilt or innocence for many lesser crimes.

In _Winship_ the Court emphasized the social interest in the reliability of the jury verdicts by holding that the "use of reasonable-doubt standard is indispensible to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned". _Id._ at 363, 364, 25 L.Ed.2 368, 90 S.Ct. 1068.

In the instant case these interests are implicated to a greater degree than they were in _Winship_ itself. Petitioner there faced an 18-month sentence, with a maximum possible extention of an additional four and one-half years, 397 U.S., at 360, 25 L.Ed. 2d

368, 90 S.Ct. 1068, whereas Movant here has been erroneously sentenced to (    ) months' imprisonment (    ) months over what the law permits. Both the stigma to Movant and the community's confidence in the administration of criminal law are also greater here, since the adjudication of delinquency involved in Winship was "benevolent" in intention, seeking to provide "a generously conceived program of compassionate treatment. cf., Id. 376, 25 L.Ed.2d 368, 90 S.Ct. 1068 (Burger, C.J., dissenting).

Not only are the interests underlying Winship implicated to a greater degree in this case, but in one respect the protection afforded by those interests is less here. In Winship the ultimate burden of persuasion remained with the prosecution, although the standard had been reduced to proof by a fair preponderance of the evidence. In this case, by contrast, the judge made findings totally eliminated the jury, shifting the burden of proof to Movant at sentencing absent a grand jury charge or admitted by the Movant in the plea. The result, in a case such as this one where Movant is required to proof facts (not charged in the indictment)    in

---

1/
    See Duncan v. Louisiana, 391 U.S. 145, 160, 20 L.ed.2d 491, 88 S.Ct. 1444 (1968): "The penalty authorized by the law of the locality 'may be taken as gauge of its social and ethical judgments.'" Quoting from District of Columbia v. Calwans, 300 U.S. 617, 628, 81 L.Ed. 843, 57 S.Ct. 660 (1937).

dispute, is to increase further the likelihood of an erroneous conviction as is the case here. Such a result directly contravenes the principle articulated in Speiser v. Randall, 357 U.S. 513 (1958), and In re Winship, 397 U.S. at370-372.

The consequences of a violation of the standard of proof beyond a reasonable doubt such as the one here requires application of the protections afforded by the Court's opinion in In re Winship (i.e. aanounced to be retroactively applicable months after the decision). Because Booker relies in In re Winship for its reaffirmation of the standard of proof beyond a reasonable doubt, it would be inconsistent with the Court's intentions in In re Winship not to hold Booker retroactively applicable to cases on collateral review, when in fact, the Court held In re Winship applicable to cases on collateral review. See Brown v. Louisiana, 447 U.S. 323, 65 L.Ed.2d 159 (1980), holding that the constitutional rule that the concurrence of six jurors is constitutionally required to preserve the substance of the jury trial right and assure the reliability of its verdict is entitle to fully retroactive effect.

## VII.   The Supreme Court Has Consistently Ruled that Cases Wherein, The Court's Ruling is Intended to Preserve The Integrity of the Trial Process Are to be Held Retroactive.

Burden of Proof:

The Supreme Court, in the following cases, has granted retroactive effect to its rules involving the burden of proof.

In Hankerson v. North Carolina, 432 U.S. 233, 53 L.Ed.2d 306, 97 S.Ct 2399, the Court held that the rule of Mullaney v. Willbur, 421 U.S. 684, 44 L.Ed.2d 508, 95 S.Ct 1881 (1975), which invalidated, as violative of the due process clause of the Fourteenth Amendment, presumtions shifting the burden of proof concerning elements of a criminal offense to the defendant and which require a state to establish all such elements beyond a reasonable doubt, is retroactively applicable to trial completed before the date on which the Mullaney decision was rendered. The Court said that it had never deviated from the rule that where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs the truthfinding function and so raises serious questions as to the accuracy of guilty verdicts in past trials, the new rule is given complete retroactive effect. The reasonable doubt standard of proof involve in this case, the Court went on, is substantial a requirement under Mullaney as it was in previous decisions by the court.

In Ivan V. v. New York, 407 U.S. 203, 32 L.Ed.2d 659, 92 S.Ct 1951 (1972), the Court held that its rule that proof beyond a reasonable doubt is among the essential of due process and fair treatment that must be afforded at the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult (i.e. the rule was announced in In re Winship) is to be given complete retroactive effect. The

Court explained that the reasonable doubt standard provides substance for the presumption of innocence and that since due process commands that no man shall loose his liberty unless the government has borne the burden of convincing the fact finder of his guilt, the reasonable doubt standard is indispensable for, the court added, it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue. The Court further stated that the major purpose of the constitutional standard of proof beyond a reasonable doubt was intended to overcome an aspect of a criminal trial that substantially impaired the truth-finding function.

In the case at bar the standard of "proof beyond a reasonable doubt" was bluntly violated during Movant's criminal proceedings and thus, <u>Booker</u> must be applied retroactively so as to allow Movant to obtain "some" relief from the prejudice suffered as result of the violations by the District Court of Movant's constitutional right to Due Process, Jury trial, and a determination of **guilt beyond a reasonable doubt.**

<u>CONCLUSION</u>

For the foregoing reasons this petition should be granted and an Order by this Court should be issued ordering Movant's immediate release.

Date; June 24, 2005                    Respectfully submitted,

                                                                    Rene Medina, pro se.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 24th day of June, 2005, to:  Respondent, Scott A. Middlebrooks, Warden, Federal Prison Camp Montgomery, Maxwell Air Force Base, Montgomery, Alabama  36112.  This certificate of service is submitted under 28 U.S.C. §1746.


Rene Medina, pro se.
Reg No. 46121-004
Federal Prison Camp Montgomery
Unit - Montgomery
Maxwell Air Force Base
Montgoemry, AL  36112